Bail refused in an action of trespass against the officers of a court martial for imprisoning the plaintiff; it not appearing that they had exercised their power, whether legally or illegally assumed, with oppression.

## DUFFIELD *against* SMITH and others.

THIS was an action of trespass, assault and battery, and false imprisonment, against *Isaac Deaves* president of a militia court martial, *Joseph Lloyd* the judge advocate, and *John Smith* marshal of the *Pennsylvania* district, bail 3000 dollars; and it came now before the Court upon a rule to shew the cause of action, and why the defendants should not be discharged on common bail.

The plaintiff's affidavit set forth, that some weeks since he was served with a notice signed by *Deaves*, requiring him to appear before a court martial, to answer for a disobedience of orders of the President of the *United States*, in not appearing at a muster of militia, held on the 19th of *April* 1813. He did not appear as required by the notice. He was shortly afterwards called on by *Deaves*, with a note from *Lloyd* the judge advocate, requesting his attendance before the court martial. This note he also disregarded. In consequence of this a guard of soldiers was sent to his dwelling house the next morning; and the plaintiff being absent, they searched all the rooms of the house, and the cellar, in order to arrest him. The guard returned the next morning, and the plaintiff seeing them, concealed himself in an adjoining house. They again went through part of the plaintiff's house, and threatened to billet themselves in his house, and to eat and drink at his expense, until he surrendered himself, and appeared before the court martial. After the guard retired, he went to the court martial. *Deaves* presided, and *Lloyd* acted as judge advocate. The latter informed him that he was brought there under a charge of disobedience of orders of the President of the *United States*, and inquired whether he had any thing to offer in extenuation. The plaintiff answered that he was in the service of the bank of *Pennsylvania* at the time, had a family to support, and could not attend the muster of the militia. Some weeks after, the plaintiff went with the marshal's deputy to the marshal, upon the subject of the fine assessed upon him by the court martial, and the marshal told him he must pay it, or go to jail. The deputy afterwards called upon the plain-

tiff at a stage office where he was employed, and told him he had orders from the marshal to take him, and that he had better go with him and see the marshal. He went. The marshal repeated that he must pay the fine or go to jail, that his deputy would go with the plaintiff among his friends to try to get the money. The plaintiff requested the marshal to call at the stage office at five o'clock, it then being dinner time. The marshal refused. The deponent then left the marshal's office in custody, and went to the stage office where he remained about an hour, and was then taken towards the jail. After going some distance, he returned with the deputy to the stage office, and sent for the proprietor to ask his advice. The proprietor offered to pay the fine. The plaintiff said he preferred consulting counsel, which he was permitted to do; and counsel having advised him not to pay, he was committed to prison. After he was in prison, the proprietor of the stage office paid the fine of 30 dollars, and the keeper's costs, and the plaintiff was discharged.

The affidavit then proceeded to state that the plaintiff was a man without any property, which he had stated to *Deaves* before appearing at the court martial, and to the marshal before the arrest; *that he did not attend the muster on the 19th of April* 1813, *nor did he at any time enroll himself as a draft in the service of the United States;* and as he had been advised, the proceedings against him were not sanctioned by law.

Two questions were made in the case; 1. Whether the court martial was authorized by law to inflict the fine upon the plaintiff. 2. If not, whether the plaintiff was entitled to bail. On the first question, as a majority of the Court gave no opinion, and the point involved several acts of congress and of this Commonwealth, an official correspondence, and a variety of military orders, it is unnecessary to state the argument. On the second, supposing the Court to have had no authority,

*Gibson* and *Hallowell* for the plaintiff, contended, that as it was a case involving the liberty of the citizen, and the sanctity of his home, which had been brutally violated by the guard, and as the invasion proceeded from a military court whose encroachments were always watched with

1814.

DUFFIELD
*v.*
SMITH
et al.

jealousy, and punished with exemplary rigour, it was the duty of the Court, exercising a just discretion, to hold the defendants to bail. They cited 1 *Sellon* 35., *Frye* v. *Sir Chaloner Ogle* (*a*), 2 *M'Arthur* 242., *Lehman* v. *Allen* (*b*).

*Browne* and *Dallas* on the same point answered, that the general rule was against holding to bail in actions of trespass; and that the Court exercised its discretion in ordering it only in flagrant cases, as of an outrageous assault and battery, or when there had been an oppressive exercise of military power as in *Frye's* case, or where the defendants were about to leave the state. 1 *Crompton* 35. In the present instance there was no feature of oppression, but on the contrary a disposition manifest throughout to perform the duty incumbent on the defendants, in a lenient manner. The conduct of the guard was unauthorized.

TILGHMAN C. J. I think it unnecessary in the present stage of the action, to give an opinion, whether the proceedings of the court martial have been conformable to law. Let it be supposed that the plaintiff has shewn cause of action. That is putting the matter on the most favourable footing for him. The general rule is, that in actions of trespass, bail is not demandable, because there is no standard by which the damages can be measured. But there are exceptions to this rule. One is, where the defendant is about to depart out of the jurisdiction of the court. Another is, where there has been a violent battery, in which the plaintiff may sometimes swear to damages to a certain amount, and it may be evident from a view of the wounds, that considerable damage must have been sustained. There are other cases where it is presumable that large damages will be given, because the subject may have been discussed in an action against others for a similar trespass. Such was the case of a court martial of which Sir *Chaloner Ogle* was president, (cited by the plaintiff's counsel) whose proceedings had been proved to be unjust, arbitrary and oppressive. The case before us comes within none of these exceptions. The court martial was not convened by the defendants through a wanton spirit of mischief, but in obedience to the orders of the governor of the

(*a*) 1 *M'Arthur* 229.            (*b*) 1 *Wils.* 160.

1814.

DUFFIELD
v.
SMITH
et al.

commonwealth; nor in the course of their proceedings has the plaintiff been treated by them with contumely, insolence or oppression. On the contrary, nothing offensive has been shewn in the conduct of the president of the court or the judge advocate; and the marshal behaved with great kindness, in suffering his deputy to attend the plaintiff to the houses of his friends, in order to borrow money to pay the fine. One of these friends offered money, which the plaintiff refused, and went to jail by advice of counsel, in order to lay a foundation for damages in this action. I pass no censure on the plaintiff for choosing to go to jail, he had a right so to do; and it is highly important to the citizens of this Commonwealth to have it judicially decided, whether the acts of this court martial are warranted by law. But I see nothing in this case, which should take it out of the general rule with regard to special bail. It is impossible to say what damages a jury may think proper to give. Where national liberty is invaded, high damages are sometimes given by way of example, though the plaintiff has suffered very little injury; on the other hand, a jury might think the rights of the nation sufficiently vindicated by small damages for the first offence, against persons who had conducted themselves with mildness and decency in a doubtful case, where they were called upon to act by superior authority. It is not for me to anticipate the verdict, nor do I think it prudent to say, until the cause comes to a hearing, any thing which may have a bearing against either party with respect to damages. I am of opinion, that there is no reason, why the Court should in this instance depart from the general rule, which permits an appearance without bail in actions of trespass. But I desire it to be understood, that my opinion would be different, should a case be presented, where the members of a court martial had conducted themselves insolently, rudely or oppressively towards those, who by their religious principles are known to be conscientiously opposed to the bearing of arms. On such persons the law itself operates with sufficient rigour, and should not be aggravated by unnecessary severity. No case of that kind has yet occurred, and I sincerely hope none ever may.

1814.

DUFFIELD
*v.*
SMITH.
et al.

YEATES J. I cannot reconcile my mind to the exercise of the powers of courts martial over private citizens, or militia men, who have not mustered or been in actual service, consistently with the provisions of the constitution of the *United States*, or of this Commonwealth. Nor can I see in the act of congress of 28th *February* 1795, any authority delegated to such courts martial, to compel such persons to appear before them, to answer for a supposed delinquency, by the instrumentality of an armed force.

At the same time, that I feel it to be my duty thus publicly to avow my sentiments, I cannot avoid saying, that I can discover no tincture of wanton oppression in this instance by the military tribunal. The expressions of the file of men who were sent to apprehend the plaintiff in his lodgings, were in my idea highly reprehensible; and if such conduct had been authorized by the orders of the court martial, I should have no hesitation as to the holding of the defendants to bail. The case before us presents a question of great importance to the rights of the citizens, but unattended with any circumstances of aggravation fairly imputable to the defendants. The plaintiff intimidated by the acts of the guard, surrendered himself to the court martial. It is our duty to decide on the motion according to the known rules of law, applicable to the circumstances of the particular case. In matters of mere tort, bail is not of course, but may be directed by the special order of a judge, or of the whole Court. In the exercise of an impartial legal discretion, they will either order or refuse bail, according to their view of the individual wrong which is the subject of the suit. When the injury complained of is not gross or enormous, the circumstance of the defendants having expressed no intention to leave the government, to whose laws the plaintiff has appealed, will always have great weight.

Judging by these rules, I concur in opinion, that the defendants should be discharged on common bail.

BRACKENRIDGE J. was of the same opinion with the Chief Justice.

Discharged on common bail.